# THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

EVAPCO, Inc.,
a Maryland Corporation
5151 Allendale Lane
Taneytown, MD 21787

ARTURO MANJARREZ FERNANDEZ,
a Maryland Resident

       *Plaintiffs*,

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY;
245 Murray Ln. SW
Washington, DC 20528

Case No.

KEVIN K. MCALEENAN, in his official
capacity as United States Secretary of Homeland
Security;
245 Murray Ln. SW
Washington, DC 20528

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES ("USCIS"),
20 Massachusetts Ave NW
Washington, DC 20529

KENNETH T. CUCCINELLI, in his official
capacity as Director of the United States
Citizenship and Immigration Services,
20 Massachusetts Ave NW
Washington, DC 20529

GREGORY A. RICHARDSON, in his official
capacity as Director, USCIS Texas Service Center
2501 S. State Highway 121 Business
Suite 400
Lewisville, TX 75067

       *Defendants*.

---

**COMPLAINT FOR DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §2201 et seq. AND JUDICIAL REVIEW UNDER THE ADMINISTRATIVE PROCEDURE ACT (APA) 5 U.S.C. §701, et seq.**

Plaintiffs, by and through their undersigned attorneys, commence this action against the above-named Defendants, and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      This is an action for Declaratory Judgment and Judicial Review under The Declaratory Judgment Act, 28 U.S.C. § 2201, et seq. and the Administrative Procedure Act ("APA") 5 U.S.C. § 701, et seq.

2.      This case addresses three critically important issues: a) Defendants' *ultra vires* and arbitrary and capricious regulation pertaining to the submission of filing fees as part of a petition for immigration benefits generally and, in this case, for an employment based green card; b) Defendants' failure to actually follow their own unlawful regulation pertaining to the acceptance of filing fees for the employment based green card sought in this case; and c) Defendants' intentionally misleading instructions to Plaintiffs regarding how to rectify Defendants' failure to follow their own regulation.

3.      On August 9, 2018, Plaintiff Evapco, Inc. timely filed a petition for an employment based green card for their highly skilled and valuable executive, Plaintiff Arturo Manjarrez Fernandez, along with all required USCIS filing fees paid by the Attorney of Record's law firm's checks.[1]

4.      Seven days later, on August 16, 2018, Defendants issued Plaintiffs a receipt stating that the entire required fees for all forms had been received, and that the balance due was $0.00.

5.      On August 17, 2017, Defendants even sent Plaintiffs a notice scheduling Plaintiff Manjarrez and his wife and children for the next step in their application process, a biometric intake appointment, that was set for September 6, 2018.

---

[1] The petition also included and accompanying Forms I-485, Forms I-765 and Forms I-131 that allowed Plaintiff Manjarrez and his family to adjust their status in the United States and work and travel while their application was pending.

6.      All of a sudden, on August 27, 2018—nineteen days after USCIS first received Plaintiffs' petition, and eleven days after Defendants indicated that Plaintiffs owed a zero balance for their filed petition—Defendants mailed Plaintiffs a "Rejection Notice" that simply stated that either "[t]he check or money order submitted as payment was returned by the financial institution; or [t]he credit card submitted as payment was declined by the financial institution."

7.      The August 27, 2018 notice gave no further explanation as to what, if any, problem actually occurred with the filing fee provided in this case.  It also did not give the Plaintiffs an opportunity to correct the purported deficiency as had been the law in the past. Finally, the notice did not indicate whether, as required by current regulations, Defendants tried to deposit the fee payment twice before ultimately rejecting the fee payment.

8.      When Plaintiffs' counsel reached out to Defendants for guidance on how to resolve this issue, Defendants responded that "[d]ue to nonpayment, USCIS has stopped processing the Permanent Resident Card. USCIS will resume processing after the USCIS Immigrant Fee is paid.  You should have received an invoice from USCIS finance informing you of the insufficient funds and instructions on how to pay the insufficient funds and fees. Please follow the instructions provided in the invoice to pay all insufficient funds and fees. This will allow completion of the immigrant visa processing."

9.      Notwithstanding this guidance, no such opportunity was ever provided to Plaintiffs to resume the processing in this case.  Instead, Plaintiffs' subsequently learned months later that their August 9, 2018 green card petition was deemed to have been rejected and denied. In addition, their subsequent filing to remedy this mysterious fee issue has also now been denied as untimely.

10.     As a result of Defendants' unwillingness to accept Plaintiffs' properly submitted fee payment for their timely petition for an employment-based green card, an extremely talented engineer and marketing executive is now needlessly facing potential deportation to Mexico along

with his spouse and two minor children even though they have done nothing wrong and have been extremely productive and law abiding individuals.  Moreover, Mr. Manjarrez has an additional child who aged out of her ability to obtain lawful permanent residency through her father's green card petition.

11.     The only relief Plaintiffs seek in this case is for the Court to order Defendants to reopen and reinstate their petition for lawful permanent residency and place their petition back into the same position that it would have been in today if Defendants had either: 1) not issued an unlawful new regulation regarding payment of filing fees; 2) followed their own new unlawful regulation regarding the proper handling of fee payments as part of petitions for employment based green cards; or 3) not given Plaintiffs misleading instructions on how to address the purported deficiency in this case.

12.     All of the foregoing claims are based upon the inappropriate agency action of denying the I-140 petition for Plaintiff Manjarrez's lawful permanent residency status for no legitimate reason, and for causing Plaintiff Manjarrez and his family to potentially fall out of status when his current nonimmigrant visa expires by denying his immigrant visa petition.[2]

13.     Plaintiffs, as applicants for Plaintiff Manjarrez's lawful permanent residency status (I-140), are suing Defendants in their official capacity.

14.     As a result of the misguided action of the aforementioned Defendants that failed to comply with the governing law, Plaintiffs suffered a legal wrong and are adversely affected within the meaning of the INA.

**PARTIES**

15.     Plaintiff, Evapco, Inc. is a Maryland corporation with its world headquarters in Taneytown, MD and is a leading company in the industry of commercial HVAC, industrial process, and power and industrial refrigeration.  Evapco employs approximately 3,000 employees.

---

[2] At the same time the I-140 was denied, the accompanying Forms I-485, Forms I-765 and Forms I-131 were also denied.

16.     Plaintiff, Arturo Manjarrez Fernandez, is a citizen of Mexico who resides in Maryland with his wife and children.  He has more than seventeen years of engineering experience, with a Bachelor's Degree in Electrical and Mechanical Engineering and a Master of Science degree in Industrial Relations.  He is currently lawfully employed by Evapco as a Marketing Director on H-1B non-immigrant status and was seeking to adjust his status to that of an alien admitted for lawful permanent residency.

17.     Upon receiving lawful permanent residency, Plaintiff Manjarrez was to be responsible for using his talents, training, and experience to expand Evapco's businesses in Latin America, which would create more jobs at Evapco for American workers here in the United States.

18.     Defendant, Department of Homeland Security ("DHS") is a federal agency responsible for administering the laws of Congress as to the approval or denial of immigration benefits under the INA and is the parent agency of U.S. Citizenship and Immigration Services.

19.     Defendant, U.S. Citizenship and Immigration Services, is an agency of the federal government within the Department of Homeland Security and is responsible for the administration of laws and statutes governing immigration and naturalization and the adjudication of petitions for immigration benefits, including petitions for immigrant workers and petitions for adjustment of status.

20.     Defendant, Kevin K. McAleenan, is the Acting Secretary of the United States Department of Homeland Security ("DHS"), with responsibility for the administration of applicable laws and statutes governing immigration and naturalization.  He is generally charged with enforcement of the Immigration and Nationality Act and is further authorized to delegate such powers and authority to subordinate employees of DHS.  More specifically, the Secretary is responsible for the adjudication of petitions for immigration benefits, including petitions for immigrant workers and petitions for adjustment of status.

21.     Defendant, Kenneth T. Cuccinelli, is the Director of U.S. Citizenship and Immigration Services, and is responsible for the administration of immigration and naturalization adjudication functions and establishing immigration rules, services, policies, and priorities.  These

functions include the adjudication of petitions for immigration benefits, including petitions for

immigrant workers and petitions for adjustment of status.

22.     Defendant Gregory A. Richardson, is the Director of the USCIS Texas Service

Center ("TSC") and is a federal officer acting within the parameters of his authority as the TSC's

decision maker concerning all petitions and applications for immigration benefits. In his official

capacity, Defendant Richardson was responsible for ensuring that Plaintiffs' I-140 Immigrant

Petition for Alien Worker would be adjudicated according to the lawful statutes and regulations

of the United States.

## **JURISDICTION AND VENUE**

**23.**     This court has jurisdiction of this action pursuant to 28 U.S.C. § 2201, *et seq*., 28

U.S.C. § 1331, and 5 U.S.C. 701 and 702 *et seq.*, and this action is timely under 28 U.S.C. § 2401.

Relief is requested pursuant to said statutes.  Specifically, this Court has jurisdiction over this

action pursuant to 28 U.S.C. § 1331, which provides that "district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United

States." Further, the Declaratory Judgment Act, 28 U.S.C. § 2201, provides that: "[i]n a case of

actual controversy within its jurisdiction ... any court of the United States, upon the filing of an

appropriate pleading, may declare the rights and other legal relations of any interested party

seeking such declaration, whether or not further relief is or could be sought." Review is also

warranted and relief sought under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701,

702 et seq., and § 706(1).

**24.**     Venue properly lies within this district pursuant to 28 U.S.C. § 1391(e), in that

this is an action against officers and agencies of the United States in their official capacities,

brought in the District where the Defendants reside.

**STANDING**

25.       Evapco, Inc. has a legally protected interest in a decision by the Defendants on its I-140 petition on Mr. Manjarrez's behalf which is not arbitrary and capricious, nor an abuse of discretion, and which is in accordance with law, per 5 U.S.C. § 706(2).  The invasion of this right has caused Evapco concrete and particularized injury in that, as a result of this invasion, Evapco can no longer employ Mr. Manjarrez's expert services after his H-1B visa expires and so cannot derive the expertise and revenue it previously received from the use of his services.  In addition, there is a causal connection between the injury-in-fact and the Defendants' challenged behavior in that it is precisely the Defendants' denial of Mr. Manjarrez's I-140 Immigrant Petition for Alien Worker which will prevent him from working for Evapco in the future and it is certain that the injury-in-fact will be redressed by a favorable ruling in that such a ruling will enable Evapco to employ Mr. Manjarrez again and so once more derive revenues from his services. Accordingly, Evapco has standing to bring this action. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

26.       Mr. Manjarrez likewise has a legally protected interest in a decision by Defendants on Evapco's petition on his behalf which is not arbitrary and capricious, nor an abuse of discretion, and which is in accordance with law, per 5 U.S.C. § 706(2), and this right has been violated because of the improper denial of the I-140 Immigrant Petition for Alien Worker filed on his behalf.  The violation of this right has caused him concrete and particularized injury in that, as a result of this violation, he likely can no longer be employed by Evapco after his H-1B visa expires and so cannot derive the revenue he previously received from his employment. In addition, his presence in the United States will soon be rendered unlawful.  Moreover, there is a causal connection between the injury-in-fact and the Defendants' challenged behavior in that it is precisely the Defendants' denial of Mr. Manjarrez's I-140 Immigrant Petition for Alien Worker which prevents him from working for Evapco in the future and it is certain that the injury-in-fact will be redressed by a favorable ruling in that such a ruling will enable Evapco to employ Mr.

Manjarrez permanently and so enable him to support himself and his family and lawfully remain in the United States.  Further, Evapco wishes to employ Mr. Manjarrez in the offered position. Accordingly, Mr. Manjarrez has standing to bring this action. *See Lujan*, *supra*.

## EXHAUSTION OF REMEDIES

27.     Plaintiffs have exhausted their administrative remedies. The denial of the Plaintiffs' I-140 Immigrant Petition for Alien Worker for Mr. Manjarrez constitutes a final administrative action for which there is no administrative appeal, which is clearly stated in the denial notice itself.

## FACTS

### I. Introduction

28.     Plaintiff Evapco is an industry leading manufacturing company with global resources and solutions for worldwide heat transfer applications. They are dedicated to designing and manufacturing the highest quality products for the evaporative cooling and industrial refrigeration markets around the globe.

29.     Plaintiff Arturo Manjarrez Fernandez is the quintessential example of the merit-based, high-skilled, immigrant that policy-makers seek to encourage into the United States.  He has seventeen (17) years of engineering experience, a Bachelor's Degree in Electrical and Mechanical Engineering and a Master of Science degree in Industrial Relations.

30.     Plaintiff Manjarrez has worked at Evapco since October 2014 on H-1B nonimmigrant visa status that is set to expire on September 2, 2020, at which point he is required to leave the country with his wife and children unless they are able to obtain lawful permanent residency.

31.     Due to Plaintiff Manjarrez's value to Evapco, and their desire that Mr. Manjarrez increase their sales in the Latin American market, Evapco petitioned to keep Mr. Manjarrez at

Evapco as a lawful permanent resident pursuant to Section 203(b)(A)(ii) of the Immigration and Nationality Act (INA).

32.     The first step in what is often a multi-year-long process of obtaining lawful permanent residency for a foreign national under INA Section 203(b) is to obtain what is known as a "labor certification."  This is where the Department of Labor certifies to USCIS that there are not sufficient U.S. workers able, willing, qualified and available to accept the job opportunity in the area of intended employment and that employment of the foreign national will not adversely affect the wages and working conditions of similarly employed U.S. workers.  This process is currently taking close to a year to complete from beginning to end and costs employers thousands of dollars to complete.

33.     In this case, it is undisputed that Evapco successfully obtained this Labor Certification on February 12, 2018.

34.     Pursuant to 20 C.F.R. § 656.30(b)(1), applications for employment based green card status must be filed within 180 calendar days of the date the Department of Labor granted the certification, which in this case would have been August 11, 2018.

**II. The Original August 9, 2018 I-140 Filing (SRC1890603060)**

**35.**     On August 9, 2018, Evapco timely filed a I-140 Immigrant Petition for Alien Worker for Plaintiff Manjarrez, along with the required USCIS filing fee paid for by the Attorney of Record's law firm's checks. See Ex. 1.

**36.**     Seven days later, on August 16, 2018, Defendants issued Plaintiffs a receipt confirming that the entire required fee had been received, and that the balance due was $0.00. The I-140 petition was assigned case number SRC1890603060**.**  *See* Ex. 1.

**37.**     On August 17, 2017, Defendants even sent Plaintiffs a notice scheduling Plaintiff Manjarrez and his wife and children for the next step in their application process, a biometric intake appointment, that was set for September 6, 2018. *See* Ex. 2.

**38.**     All of a sudden, on August 27, 2018—nineteen days after USCIS first received Plaintiffs' petition, and eleven days after Defendants indicated that Plaintiffs owed a zero balance for their filed petition—Defendants mailed Plaintiffs a "Rejection Notice" that simply stated that either "[t]he check or money order submitted as payment was returned by the financial institution; or [t]he credit card submitted as payment was declined by the financial institution." *See* Ex. 3.

**39.**     The August 27, 2018 notice gave no further explanation as to what purported problem actually arose with the filing fee in this case.  It did not give Plaintiffs an opportunity to correct the purported deficiency as had been permitted by law in the past.  And, the notice did not specify, as required by current regulations, that Defendants tried to deposit the fee payment twice before ultimately rejecting the fee payment.  *See* Ex. 3.

**40.**     On September 5, 2018, immediately upon receiving this notice, Plaintiffs' counsel reached out to the USCIS service center to determine why the payment was rejected in this case. *See* Ex. 4.

**41.**     Plaintiffs' counsel pointed out that the filing fee checks that were submitted in this case came from the law firm of Holland & Knight LLP, and that there should have been no reason that these checks should not have been processed.

**42.**     Plaintiff Manjarrez and his wife and children then attended their biometrics appointments and had their biometrics taken on September 6, 2018.  At this time, the Officers capturing the family's biometrics said nothing to Mr. Manjarrez and his family about the submissions being rejected.

**43.**     On September 17, 2018, Plaintiffs' counsel received from USCIS several envelopes with no cover letter or other communication from USCIS containing part of the supporting materials for the Form I-140 (but not the actual Form I-140, the original labor certification filed in support of the Form I-140, the original company support letter, or the experience letter), the Forms I-485, Forms I-765 and Forms I-131 and supporting materials for

Mr. Manjarrez and his family.

44.     In total, Plaintiffs' counsel received the materials back in 10 separate envelopes from USCIS, none of which included a cover letter or any other communication from USCIS – just documents in brown USCIS envelopes.  To this date, Plaintiffs' counsel has not received the entire submission back and has never received the actual Form I-140 or the original certified labor certification filed in this case.

45.     On September 18, 2018, Plaintiffs' counsel called USCIS again to inquire about the status of their initial inquiry. The Officer to whom their call was escalated advised that: a) he was aware that counsel inquired earlier and that an inquiry response was mailed by USCIS; b) counsel needed to wait to receive the response (at least 10 days) and should do nothing until the response was received; and c) counsel was to follow the instructions in the response.

46.     On September 19, 2018, Plaintiff Evapco contacted Plaintiffs' counsel to advise that they received from USCIS a brown envelope containing Evapco's income tax return but there was no cover letter or other information or communication from USCIS in the envelope.

47.     On October 2, 2018, Plaintiffs' counsel received by mail a USCIS notice dated September 15, 2018 stating that "[d]ue to nonpayment, USCIS has stopped processing the Permanent Resident Card. **USCIS will resume processing after the USCIS Immigrant Fee is paid**.  You should have received an invoice from USCIS finance informing you of the insufficient funds and instructions on how to pay the insufficient funds and fees. Please follow the instructions provided in the invoice to pay all insufficient funds and fees.  **This will allow completion of the immigrant visa processing**." *See* Ex. 4 (emphasis added).

48.     The language in the notice is consistent with what one of the Officers told Plaintiffs' counsel initially regarding receiving an invoice to pay the fees so the processing of the submissions will continue and that the submissions would only be returned if counsel fails to pay the fees following issuance of the invoice.

49.     Plaintiffs' counsel never received an invoice or instructions to pay the fees.

**50.**     After receiving this letter, Plaintiffs' counsel called USCIS again on October 3, 2018, and was unable to reach a person.  As instructed by the system, counsel requested a call back from USCIS.  The following morning Plaintiffs' counsel received a call back from USCIS and was advised that the rejections were the responsibility of the LockBox and counsel should communicate directly with the LockBox and explain the situation to that office to resolve this matter.

**51.**     As background, USCIS Lockbox facilities located in Chicago, Illinois; Phoenix, Arizona; and Lewisville, Texas, are operated by a Department of Treasury designated financial agent.  Their function is to: a) receive, open, sort and stage mail; b) prepare and scan documents; c) enter document data in system from scanned images; d) accept or reject applications and related fees based on business rules; e) balance applications and fees; f) deposit payments to the U.S. Treasury; g) send receipt notices for accepted applications to the applicant and designated representative; h) return rejected applications to the applicant or designated representative; i) transmit application data to USCIS and payment data to U.S. Department of Treasury; and j) send application files to the appropriate USCIS service center or field office for further processing. *See* Ex. 5.

**52.**     USCIS Customer Service stated that they were unable to determine what happened and advised Plaintiffs' counsel that they should have received invoices to pay fees and have the submissions reinstituted.   But not only did counsel never receive invoices, the submissions were returned partially to counsel and the employer as described above.

**53.**     On October 4, 2018, Plaintiffs' counsel then sent an email to the USCIS Lockbox, as instructed by USCIS the previous day, explaining the history of events and requested return of the critical Form I-140 materials so they could resubmit the application, and attached copies of the USCIS filing receipts confirming payment in full was received, biometric appointment notices, USCIS rejection notices, and USCIS Notice of Contact letter.

**54.**      Upon sending the email to the Lockbox, Plaintiffs' counsel received an automated reply from the Lockbox confirming receipt of the email and stating that counsel should expect a response within the next 15 business days.

**55.**      On November 15, 2018, after waiting patiently for a response as instructed to by Defendants and yet receiving no response, Plaintiffs' counsel resent their October 4, 2018 email to the Lockbox requesting a status inquiry.  Plaintiffs' counsel pleaded for a response indicating that the matter was very critical since the Beneficiary's labor certification had now expired.

**56.**      Upon sending this email to the Lockbox, Plaintiffs' counsel again received an automated response confirming receipt of the email and again stating they would receive a response within 15 business days.

**57.**      On November 29, 2018, after receiving no response, Plaintiffs' counsel sent an email to the USCIS Texas Service Center (TSC) Follow Up email address directly.  The email sent to the TSC Follow Up was the same one sent to the Lockbox twice with a short explanatory introduction explaining the email sent to the Lockbox twice and the fact that there had been no response.

**58.**      On November 30, 2018 – Officer XM0356 from the TSC Follow Up responded by email stating this USCIS records indicate that on August 27, 2018, this case was rejected for nonpayment of fees and that Plaintiffs must file a new application with proper fees and supporting documentation.  The email response also erroneously advised that USCIS records had indicated that Plaintiffs had not commenced an initial inquiry with the USCIS Contact Center and again advised Plaintiffs' counsel to email the Lockbox.

59.      On the same day, Plaintiffs' counsel emailed a response to Officer XM0356 from the TSC Follow Up and thanked the Officer for the response. Counsel explained that the response received was erroneous in several respects in that inquiries had been made, the Lockbox had been contacted repeatedly and unsuccessfully, and the USCIS customer service center had previously said they could not understand why the submission was rejected.

60.     On December 1, 2018, Plaintiffs' counsel received an email from the Lockbox stating that it is only a form and fee receipting facility and they were, unfortunately, unable to assist counsel with the questions and concerns raised in their inquiry.  However, the Lockbox said that they had forwarded the inquiry and contact information to the USCIS Contact Center, which assists with resolving issues with immigration services and told counsel that the USCIS Contact Center would be in touch once they had researched this case.

61.     On December 13, 2018, an individual named Ms. Crooms from the USCIS Contact Center in Washington, DC called Plaintiffs' counsel.  She stated that she had reviewed the file and also could not understand why the applications were rejected.  She then stated that she had contacted the TSC for more information.

62.     During this call, Plaintiffs' counsel made it very clear to Ms. Crooms that they had spent a lot of time trying to resolve this matter and if they were unable to resolve it, the entire process would need to start again which could place Plaintiff Manjarrez's immigration status and that of his family in jeopardy.  Ms. Crooms advised Plaintiffs' counsel that she was sending an email to the TSC and that USCIS was more likely to pay attention to her email than that of counsel and that she will try to help get this matter resolved.  She also stated that she would try and get the TSC to agree that the rejections were a USCIS error so that the case could be re-opened.  Finally, she said the TSC normally takes 5 to 7 days to get back to her but it could take a little longer because of the holidays.

63.     On January 16, 2019, Plaintiffs' counsel received a call from Ms. Crooms advising that she had not forgotten about the case and she was still trying to figure out what happened to the file and get a resolution.  Ms. Crooms stated she would try and get back to Plaintiffs' counsel soon but she wanted counsel to know that they were still trying to figure out what happened.

64.     On January 29, 2019 – Ms. Crooms from the USCIS Contact Center called and advised that she had located the file folder and would review it and get back to counsel.

65.     On February 4, 2019 – Ms. Crooms called at 8:57am (left voicemail) and again at 4:47pm and advised that the Service/Benefit Center could not find anything in the folder other than the rejection notices.  She stated that she could not understand what happened and that counsel should resubmit the application with the rejection notices and an explanation of what had happened.  She asked that counsel let her know when the refiling occurred and that once she was advised that the applications had been refiled, she would keep an eye out for them.

**III. The Subsequent April 11, 2019 I-140 Filing (SRC1990322012)**

66.     On April 10, 2019, Plaintiffs' counsel resubmitted the Form I-140 and accompanying Forms I-485, Forms I-765 and Forms I-131 for Plaintiff Manjarrez and his family.

67.     On April 11, 2019,  Plaintiffs' counsel called Ms. Crooms from the USCIS Contact Center and left a voicemail advising that the Form I-140 and accompanying forms for Mr. Manjarrez and his family have been resubmitted, and that she would be contacted again once the USCIS filing receipts with the case numbers were received.

68.     On April 24, 2019, Plaintiffs' counsel spoke with Ms. Crooms and stated that the receipts from USCIS had arrived and provided those case numbers to Ms. Crooms. The I-140 Petition in this case was assigned as case number SRC1990322012. *See* Ex. 6.

69.     On August 15, 2019, Defendants mailed a notice to Plaintiffs indicating that they intended to deny the Immigrant Petition for Alien Worker (Form 1-140) filed by Evapco because the petition had a filing date of April 11, 2019 and, thus, the February 12, 2018 labor certification was no longer valid at the time the petition was filed. *See* Ex. 7.

70.     The Notice, however, did appear to imply that USCIS would excuse the late filing under some set of circumstances because it asked Plaintiffs to "Please submit evidence to show that USCIS received payment for the rejected Form 1-140 (SRC 1890603060)," which was the earlier I-140 Petition that was timely filed. *See* Ex. 7.

71.     On September 11, 2019, Plaintiffs responded to the Notice of Intent to Deny by in fact providing a copy of USCIS's own receipts showing that proper payments were submitted with the original I-140 petition. *See* Ex. 8.   Consequently, Plaintiffs met Defendants' own stated burden of proof of submitting "evidence to show that USCIS received payment for the rejected Form 1-140 (SRC 1890603060)."

72.     Plaintiffs' response to the Notice of Intent to Deny also set forth everything that had occurred in this case, and explained that Defendants' previous rejection notice neither provided any explanation as to when or why the check was rejected or provided any opportunity to cure the rejection. *See* Ex. 8.   Therefore, Plaintiffs argued that the submission should have been treated as timely filed and that there was no purpose for rejecting this filing and placing an entire family's immigration status at risk.

73.     Notwithstanding Plaintiffs having responded with the exact evidence Defendants had requested, on September 27, 2019, Defendants rejected Plaintiffs' Immigrant Petition for Alien Worker (Form 1-140). *See* Ex. 9.   The reason given was that the petition had a filing date of April 11, 2019 and, thus, the February 12, 2018 labor certification was no longer valid at the time the petition was filed. *Id.*

74.     Even on the basis of its own stated reasons for denial, Defendants' denial notice was legally deficient for three distinct reasons.

75.     First, the denial cited 8 C.F.R. § 103.2(a)(7)(ii)(D), which states that "If a check or other financial instrument used to pay a fee is returned as unpayable, USCIS will re-submit the payment to the remitter institution one time. If the instrument used to pay a fee is returned as unpayable a second time, the filing will be rejected and a charge will be imposed in accordance with 8 CFR 103.7(a)(2)." But, the denial notice never indicated the dates that Plaintiffs' payment had been submitted, returned, and resubmitted—nor did it even indicate that Plaintiffs' payment had been resubmitted to the remitter institution a second time as required by the regulation. Without having shown that any of this was done and that payment was rejected, the denial is plainly invalid on its face.

76.     Second, Defendants' Notice of Intent to Deny (NOID) used the following words to request additional evidence: "Please submit evidence to show that USCIS received payment for the rejected Form 1-140 (SRC 1890603060)." *See* Ex. 7.  It cannot be disputed that Plaintiffs met this burden by providing USCIS's own receipts showing that proper payments were submitted with the application. *See* Ex. 8.  Nevertheless, Defendants' denial notice impermissibly moved the goalposts and stated that "[w]hile Counsel states that it is not possible that they did not have the funds to cover the cost of the USCIS filings they did not provide any documentary evidence as requested in the NOID to establish this claim." *See* Ex. 9.  As is evident, the NOID did not ask for evidence of Plaintiffs' counsel's bank statements or any other evidence of ability to pay, the NOID plainly asked just for evidence that USCIS received payment.  *See* Ex. 7.  If Defendants wanted a bank statement from Plaintiffs' counsel to show that the check provided was drawn from an account that had sufficient funds, they should have explicitly asked for this, and it would have been provided.[3]

77.     Third, given that the Defendants' NOID and Denial notices both clearly contemplate that this case would have been permitted to proceed had they received some unknown level of satisfactory evidence showing that the fee had been paid in this case, it is unclear why Defendants did not allow the current fee payment in this case to satisfy the payment obligation since Defendants had provided no evidence or explanation on the record as to why the original fee payment had been rejected in the first place.

**IV. Defendants' *ultra vires* and arbitrary and capricious regulation [8 C.F.R. § 103.2(a)(7)]**

78.     In addition to the invalidity of the facial reasons given for denying Plaintiffs' I-140 petition, the denial notice also stated that the governing regulation on fee payments—8 C.F.R. § 103.2(a)(7)—had changed in 2016. *See* 81 FR 73328 [Oct. 24, 2016]. Under the new rule, filers

---

[3] Plaintiffs were inclined to provide such a statement as part of the instant complaint to demonstrate that the availability of funds was clearly not an issue in this case, but have not done so at this time since this is an Administrative Procedure Act that is confined to the record.

for immigration benefits were no longer required to be notified of a problem with a fee payment and were no longer provided with a 14 calendar day window to remedy any issues with a fee payment. *See* Exs. 8 and 9.

79.     But the new regulation, 8 C.F.R. § 103.2(a)(7) (2016), is *ultra vires* because it is "in excess of statutory jurisdiction, authority, or limitations," id. 5 U.S.C. § 706(2)(C).

80.     As acknowledged by the Defendants, the sole statutory basis for the regulation itself that no longer provides a 14-day remedy period for a purported problem with a fee payment is INA Section 286(m), 8 U.S.C. § 1356(m). *See* 81 FR 26904-01(May 4, 2016).

81.     Yet the only function and/or purpose of INA Section 286(m) is to authorize Defendants to charge fees for adjudication and naturalization services at a level to "ensure recovery of the full costs of providing all such services, including the costs of similar services provided without charge to asylum applicants or other immigrants."

82.     In fact, the statute explicitly states that "such fees may also be set at a level that will recover any additional costs associated with the administration of the fees collected." *See* INA Section 286(m), 8 U.S.C. § 1356(m).

83.     As such, the statute does not authorize Defendants to simply invalidate a petition filed where there is a question as to the validity of the fee payment.  On the contrary, the statute explicitly instructs Defendants to instead attempt to "recover any additional costs associated with the administration of the fees collected."  That is what the previous regulation intended to do, and that is why under 8 C.F.R. § 103.2(a)(2), a $30 penalty is charged in cases where payment of a fee or any other matter is not honored by the bank or financial institution on which it is drawn.

84.     The only authority Defendants have under the statute is to attempt to recover the costs of non-payment. They do not have any authority under INA Section 286(m), 8 U.S.C. § 1356(m) to reject applications for improper fee payment without providing any evidence that the fee was actually rejected by the bank or any explanation as to what actually occurred in the case. Such authority plainly violates due process and fundamental fairness.

85.     Moreover, the Rule is also arbitrary and capricious because it allows Defendants to summarily reject applications for critical immigration benefits and leave noncitizens out of lawful immigration status without requiring Defendants to provide any notice, evidence, or explanation of what the purported problem was in a particular case.  The Rule thus bears no reasonable relationship to the purported statutory purpose for its promulgation, which is to "ensure recovery of the full costs of providing all such services, including the costs of similar services provided without charge to asylum applicants or other immigrants," and to "recover any additional costs associated with the administration of the fees collected." *See* INA Section 286(m), 8 U.S.C. § 1356(m).

## FIRST CAUSE OF ACTION

## (JUDICIAL REVIEW UNDER THE ADMINISTRATIVE PROCEDURE ACT)

86.     Plaintiffs re-allege and incorporate by reference all of the allegations of paragraphs 1 through 85 above.

87.     Plaintiffs Evapco and Manjarrez properly filed an I-140 Petition Immigrant Petition for Alien Worker on both August 9, 2018 and April 11, 2019.

88.     Defendants' reasoning in their September 27, 2019 denial decision is legally defective and factually erroneous on its face for three reasons.

89.     First,  the denial notice never indicated the dates that Plaintiffs' payment had been submitted, returned, and resubmitted [as required 8 C.F.R. § 103.2(a)(7)], nor did it even indicate that Plaintiffs' payment had been resubmitted to the remitter institution a second time as required by 8 C.F.R. § 103.2(a)(7).

90.     Second, Defendants' Notice of Intent to Deny (NOID) asked for "evidence to show that USCIS received payment for the rejected Form 1-140 (SRC 1890603060)." *See* Ex. 7. This evidence was provided by Plaintiffs only for Defendants to then impermissibly move the

goalposts and retroactively demand evidence that Plaintiffs had "the funds to cover the cost of the USCIS filings," without having previously asked for this information. *See* Ex. 9.

91.     Third, given that the Defendants' NOID and Denial notices both clearly contemplate that this case would have been permitted to proceed had they received some unknown level of satisfactory evidence showing that the fee had been submitted in this case, it is unclear why Defendants did not allow the current fee payment in this case to satisfy the payment obligation since Defendants had provided no evidence or explanation on the record as to why the original fee payment had been rejected in the first place.

92.     Defendants' actions were unlawful and Plaintiffs' I-140 Petition should not have been denied. Defendants' denial of the petition violated the law under 8 CFR § 214.1(c)(4) and is reviewable and should be overturned pursuant to the APA at 5 U.S.C. § 706.

## SECOND CAUSE OF ACTION

### (VIOLATION OF ADMINISTRATIVE PROCEDURE ACT – SUBSTANTIVELY ARBITRARY AND CAPRICIOUS, ABUSE OF DISCRETION, CONTRARY TO CONSTITUTION OR STATUTE)

93.     Plaintiffs re-allege and incorporate by reference all of the allegations of paragraphs 1 through 85 above.

94.     The APA, 5 U.S.C. § 706(2), prohibits federal agency action that is, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "contrary to constitutional right"; or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

95.     DHS and USCIS are each an "agency" under the APA. 5 U.S.C. § 551(A).

96.     In implementing the Rule, defendants took unconstitutional and unlawful action, in violation of the APA, by, among other things, as set forth herein:

a.  promulgating a rule that allows Defendants to reject immigration petitions rather than providing an opportunity to cure any unresolved filing fee issues— especially where the statute confers no such authority. On the contrary, the

statute explicitly instructs Defendants to instead attempt to "recover any additional costs associated with the administration of the fees collected.";

b.   promulgating a rule that allows Defendants to summarily reject applications for critical immigration benefits and leave noncitizens out of status without requiring Defendants to provide any notice, evidence, or explanation of what the problem with the fee payment was in that particular case.  The Rule thus bears no reasonable relationship to the purported statutory purpose for its promulgation, which is to "ensure recovery of the full costs of providing all such services, including the costs of similar services provided without charge to asylum applicants or other immigrants," and to "recover any additional costs associated with the administration of the fees collected." *See* INA Section 286(m), 8 U.S.C. § 1356(m).

97.      Defendants acted arbitrarily and capriciously, otherwise not in accordance with law, and contrary to constitutional right, and abused their discretion, in violation of the APA.

98.      Defendants' violations have caused harm to Plaintiffs.


### THIRD CAUSE OF ACTION

### (VIOLATION OF ADMINISTRATIVE PROCEDURE ACT – IN EXCESS OF STATUTORY JURISDICTION, AUTHORITY, OR LIMITATIONS)

99.      Plaintiffs re-allege and incorporate by reference all of the allegations of paragraphs 1 through 85 above.

100.      The APA, 5 U.S.C. § 706(2)(C), prohibits federal agency action that is made "in excess of statutory jurisdiction, authority, or limitations."

101.      DHS and USCIS lacked rulemaking authority to promulgate 8 C.F.R. § 103.2(a)(7) as written.

102.      The sole statutory basis for the regulation itself that no longer provides a 14-day remedy period for a purported problem with a fee payment is INA Section 286(m), 8 U.S.C. § 1356(m). *See* 81 FR 26904-01(May 4, 2016).

103.    Yet the only purpose/function of this statute is to authorize Defendants to charge fees for adjudication and naturalization services at a level to "ensure recovery of the full costs of providing all such services, including the costs of similar services provided without charge to asylum applicants or other immigrants."

104.    In fact, the statute explicitly states that "such fees may also be set at a level that will recover any additional costs associated with the administration of the fees collected." *See* INA Section 286(m), 8 U.S.C. § 1356(m).

105.    As such, the statute does not authorize Defendants to simply invalidate a petition filed where there is a question as to the validity of the fee payment.  On the contrary, the statute explicitly instructs Defendants to instead attempt to "recover any additional costs associated with the administration of the fees collected."  That is what the previous regulation intended to do, and that is why under 8 C.F.R. § 103.2(a)(2), a $30 penalty is charged in cases where payment of a fee or any other matter is not honored by the bank or financial institution on which it is drawn.

106.    The only authority Defendants have under the statute is to attempt to recover the costs of non-payment. They do not have any authority under INA Section 286(m), 8 U.S.C. § 1356(m) to reject applications for improper fee payment without providing any evidence that the fee was actually rejected by the bank or any explanation as to what actually occurred in the case.

107.    The promulgation of the Rule by DHS and USCIS is in excess of the agencies' statutory jurisdiction, authority, or limitations.

108.    Defendants' violations have caused harm to Plaintiffs.

## FOURTH  CAUSE OF ACTION

## COLLATERAL ESTOPPEL

109.    Defendants intentionally misled the Plaintiffs in their September 15, 2018 notice stating that "Due to nonpayment, USCIS has stopped processing the Permanent Resident Card. USCIS will resume processing after the USCIS Immigrant Fee is paid," and that Plaintiffs "should have received an invoice from USCIS finance informing you of the insufficient funds and

instructions on how to pay the insufficient funds and fees. Please follow the instructions provided in the Invoice to pay all insufficient funds and fees. This will allow completion of the Immigrant visa processing." *See* Ex. 4

110.     Plaintiffs reasonably relied upon these instructions to their detriment, and delayed restarting an entirely new labor certification process on the basis of these intentionally misleading instructions.

111.     Defendants' materially and intentionally misleading statements have caused harm to Plaintiffs.

## FIFTH CAUSE OF ACTION

## RELIEF REQUESTED UNDER THE DECLARATORY JUDGEMENT ACT SEEKING REVERSAL OF PLAINTIFFS' I-140 DENIAL

112.     Plaintiffs re-allege and incorporate by reference all of the allegations of paragraphs 1 through 85 above.

113.     Plaintiffs allege that they are still eligible to have their I-140 Immigrant Petition for Alien Worker approved as they meet all conditions for approval. [4]

114.     Plaintiffs further allege that Defendants' decision of September 27, 2019 was wrong as a matter of law and should be overturned.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court:

(1) To enter judgement in the favor of Plaintiffs and against the Defendants, finding the acts of the Defendants complained of herein are in violation of law, and issue an order reopening Plaintiffs' I-140 Immigrant Petition for Alien Worker [either (SRC1990322012) and/or (SRC1890603060)] as having been properly and

---

[4] This case also seeks reinstatement and approval of the accompanying I-485, I-131, and I-765 forms as well.

timely filed with the correct filing fee;

(2) To enter a Judgment declaring that Defendants' denial of Plaintiffs' I-140 Immigrant Petition for Alien Worker [(SRC1990322012) and/or (SRC1890603060)] is violative of the INA and its attendant regulations; violative of the Administrative Procedure Act; *ultra vires*; arbitrary and capricious, an abuse of discretion and not otherwise in accordance with law; and violative of due process;

(3) An order directing Defendants and their agents to issue immediately all necessary and appropriate documents to Plaintiffs to evidence the approval of their I-140 Petition[5];

(4) An order awarding Plaintiffs their attorneys' fees and costs; and

(5) An order granting such other relief as the Court may deem just, equitable, and proper including discovery into why Defendants improperly changed the decision in this case, who issued the order to change the decision, and on what basis was the decision changed.

Dated: October 21, 2019                                  Respectfully submitted,

                                                         /s/ Leon Fresco
                                                         LEON FRESCO
                                                         HOLLAND & KNIGHT LLP
                                                         801 17th Street, NW, Suite 110
                                                         Washington, DC 20006
                                                         Telephone: (202)469-5129
                                                         Fax: (202)955-5564
                                                         Email: leon.fresco@hklaw.com

---

[5] This case also seeks reinstatement and approval of the accompanying I-485, I-131, and I-765 forms as well.